and we'll hear first from Ms. Murrell, Attorney General, pardon me. Thank you, Your Honors. May it please the Court, prisons are necessarily dangerous places. The Supreme Court's recognized this. Importantly, Congress recognized that excessive interference by federal courts and the management of state prisons needed to be curbed. That's what prompted Congress in 1995 to pass the Prison Litigation Reform Act, which put significant limits on the district courts in handling cases like this one. Those limits are more than procedural handcuffs. They sent a clear, unambiguous message to federal courts to proceed with caution and they created a presumption to proceed favoring state administration over federal judicial administration of prisons. The district court here ignored the admonitions of the Supreme Court, this court, and Congress. The district court erred in three major significant ways that require this court either to vacate and dismiss the case or at a minimum to remand with instructions. First, the district court failed to follow the PLRA. That was legal error. Second, the court applied the legal—incorrectly applied the legal standards to a prison conditions case or didn't apply those standards at all. It refused to consider current conditions and it refused to recognize facts that failed to show deliberate indifference. And finally, the ADA analysis is flawed and the injunction is improper there, too. So I'll start with the PLRA. The PLRA requirements—the PLRA requires that the court conduct a needs narrowness intrusive inquiry. The court failed to do that here. The scope of the injunction is wildly intrusive. Farmer instructed the court to avoid getting involved in the minutiae of running prisons and yet that is exactly what's happening now with the injunction that's been issued by the court with regard to the scope of the special master's— But we still don't know what the court is going to order and so why does it even make sense for you to be here right now? Judge Haynes, thank you. We do know what the court has ordered with regard to the special master provisions. The court has granted the special master's— I know that but we don't know what the special master's will say and so on and so forth. I realize that you've said this takes a lot of your time. It takes money. It takes effort. So I'm aware that y'all have said that. But we still don't really know what will be ordered to be changed. So that's why I'm kind of wondering where we stand right now. But we do know that they have been granted 24-hour access to our prison with 24-hours notice and they get access to anything they— The special master's. The special master's do. So I mean I think there is injunctive relief. We are constrained to comply with those orders by the court and then we are left open to additional orders by the court after that when they frankly do not comply with the special master provisions right out of the gate. Given the nature of this order, if this were upheld, why would any judge ever appoint a PLRA-compliant master? Indeed, Judge, I think the entirety of this case raises the question of why any judge would comply with the PLRA at all. I mean we've been in this case for nine years and we were not allowed to put on evidence of current conditions from the first week of There are multiple occasions where whether they are conducting witness examinations or whether we are simply trying to add evidence to the record and the judge said no. What if we sent it back and the judge appointed one special master along the lines that you all have argued is proper, then what? Well, Your Honor, I think if the judge complied with the PLRA and we conducted that process to choose a special master, frankly if we had done that nine years ago, we might not be here. We have continually upgraded conditions at the prison. We have not been able to put on that information and explain how it's changed the way that prison conditions are in the health care unit, but we never conceded there was a violation in the first place. Their argument, well, the burden now it seems to me is for the plaintiffs to show that the Yes. I think that is the problem. I think you might agree with that, but as far as current conditions go, they do make a lot of arguments and I have not been able to explore the record fully myself that the State was delaying and obstructing or not providing this evidence of additional remedial efforts. So how do we figure that in? Your Honor, I think that the record shows that for nine years we have continually objected to being handcuffed with evidence of current conditions all the way through the remedial trial. The judge refused to let us put on the complete evidence of what the electronic medical records have done. She refused to let us put on evidence of how the other electronic systems that are put in place at the prison have changed everything. So I don't think it's fair to say that we obstructed anything. The judge has continually not allowed us to put on full evidence of what is going on at the prison. I think that if you look back at the evidence that is in the record, just even the evidence that is there now fails to meet the standard of deliberate indifference. What evidence, specifically what evidence are you, I mean, I know your brief is replete with responses to the six areas that she found unconstitutional. You say we did this in regard to sick hall, we did that in regard to clinical care, we did something else in regard to records, we did something else in regard to leadership, something else in regard to medications. Now all that is all that post, that's all post liability, right? Post liability, yes. And some of it is even post-remedy order trial, is that right? There was evidence at the, there was discussion at the trial regarding some of these matters. So there was some limited discussion, for example, of electronic medical records, there was some very limited discussion of the fact that they were using a new system to schedule appointments and things like that. So there was some evidence of that, but very little evidence of how it transformed or how it affected the care. Well they said that they did some kind of updated in the remedy order, she said they looked at these and they weren't enough or something like that, is that right or not? Or you talk, what I'm trying to get at is what other evidence more precisely would you introduce if we were to vacate? Your Honor, I think that we would, we would show more about how, what the effect is of these changes. The, the judge gave nominal recognition to the fact that some changes have been made, but failed to recognize that they show a lack of deliberate indifference. I mean, I think that is the, the, the linchpin of a prison conditions case and of prospective relief is showing not only that there are conditions that violate the Eighth Amendment, but that we are deliberately indifferent. Just making a change, and I'm not saying that's the case here, but just, you know, hypothetically just making a change doesn't show that you care or that you're not deliberately indifferent because you could just say, well, instead of 500, we'll make it 499, that's a change. And that maybe wouldn't be a change that is helpful. So I, I guess the, the thing I'm wondering about is if the court ordered you to do X and you've already done X, then why would that be a problem? Well, for starters, because I don't think that we should be enjoined to do something that we've already done, because I think that it unnecessarily allows the federal courts to get enmeshed in the management and administration of federal prisons, which the PLRA has cautioned against. So, so I think what's fair for us to be, to not want the federal court to be engaged in the administration of our prison system and to recognize that we have indeed made significant changes and that we've never shown deliberate indifference. It was, I think, improper for the judge to start her opinion with 1989, when we have been released from federal supervision long since then. And I, I don't think, back to Judge Jones' question a couple of minutes ago, what specifically were you not allowed to introduce at trial? We were not allowed to introduce, Your Honor, there are many, many stages, many, many places in the record, and I can give you some ROA sites to certain aspects of that, but if you, when you go through this voluminous record, or your law clerks do, bless them, I apologize, it's a lot. But there are every, even in the questioning of witnesses, the judge would stop and sustain objections every time there was somebody trying to explain something that was different than what was being testified to at that time. Even when there were witnesses, for example, on the stand talking about whether they had a shower chair available, the judge would, would not allow that, that testimony. There are a number of places, and, and I would point you to part of the root of the problem, it at, at Record on Appeal, it's 35469 in the remedial trial. The judge, and I'll quote her, she said, you can say we agree to do these things, and in that can be in the nature of a consent remedy. And then at .34873 to 874, at .31918, at .31917, she just refuses to allow evidence in that would show that we're not being deliberately indifferent. Those are just a few examples, but this case has proceeded from the beginning in, in a direction toward trying to force us into a consent remedy. And the PLRA says, don't do that. It says, meet, it, it gives ample procedural, meaningful ways that she could have engaged with us and allowed us to show that we were fixing things and even appoint a special master. We did those things on our own. We didn't need the court to tell us to. I think the judge might have approached this differently if she had actually tried to articulate the, the basis for the needs, narrowness, intrusiveness criteria of the statute. I think that it was legal error not to do that and that it would have, it would have improved the ruling. Well, in other words, if it was a matter of not having enough shower chairs or something and the prison, in fact, had, had put those in place, then you couldn't show a need for injunctive relief, right? That's right. It's a matter of, it's a preliminary matter that I believe is necessary to enter an injunction. Well, one of the arguments that they probably will make is, y'all could take back the chairs tomorrow if we reversed and rendered. And so that may be the need for the injunction is to be sure the chairs remain. So the fact that you've thrown something in right before you come to us so that you win doesn't stop you from taking it out and that is a problem. So that's going to be their argument. What do you say to that? I think that the record shows that the, that the changes that we have made will be durable. There is absolutely no evidence here and we're not talking about shower chairs. We're talking about electronic medical records. We're talking about scheduling systems. We're talking about air conditioning, Judge Jones. We're talking about specialty care available on site that was not there before. Multiple clinics, multiple clinics that are available now. But you could take those clinics, well you could take some of that. I understand if you upgrade the air conditioning in a building, that tends to stay the same. But if you bring in 20 nurses, you could take them out tomorrow. I mean, so there are things, there are some things that are probably, quote, permanent changes but there are some things that are not. And I guess that's what I'm asking. Why wouldn't there need to be an injunction, assuming arguendo that those were needed under the PLRA or whatever, but assuming arguendo they were needed, why wouldn't there need to be an injunction to make sure y'all don't take back the nurses or the chairs or whatever? And I think the short answer to that is the PLRA and Farmer v. Brennan and this court's precedent, Dockery, and I would point you to Dockery v. Cain, which is a case that involves our former warden who took over the prison system in Mississippi and put in place a number of the conditions that were approved in Dockery v. Cain as showing no deliberate indifference. So we've gone beyond that in this case. Those things that were put in place that were approved of in Dockery are where this case started. We had an ATU. We had orderlies. We had people doing—we had an infirmary. We had care. Now, in any prison case, when you have 6,000 inmates, which is where this case started, or 3,600 where we are now, you are going to have a significant ability to pick and choose cases and show that there have been some bad outcomes. That's not the standard of proof. The standard of proof is deliberate indifference. You're not consensual to the sampling of what was reviewed, though, correct? We consented to the size of the sampling. I don't think we've ever consented to what the conclusions were that are drawn by the sample. I mean, we have consistently objected to any findings in this case that we were deliberately indifferent or that the conditions rise to the level of an Eighth Amendment violation. And at the end of the day, whatever the court does, it still has to comply with the PLRA, and it hasn't done so. Well, at the minimum, wouldn't the judge have to do more than just cite needs, narrowness, intrusiveness? I mean, there has to be—or otherwise, that language in the statute means nothing. Well, yes, Your Honor, I've run out of time, but I will— That's okay. It's a big case. We'll give you each side five more minutes. So I think the answer to that is yes, that the PLRA—what the PLRA did was it insisted that judges do more than just use words and wave off the restrictions in the PLRA. It came on the tail of numerous cases involving prison conditions, conditions of confinement, and Congress came back and said, slow down. Don't be so involved in—and even before that, Farmer v. Brennan cautioned against getting involved in the minutia of prison operations, and then Congress came back and said, be careful. And then Stein v. Collier says you have to show deliberate indifference up until the time of judgment. Indeed, and that has been one of our objections, is that the judge continually refused to let us do that, and so it is—it infects the entirety of the fact findings throughout the case, but even taken at face value, I do not believe that the case law shows that those conditions rise to the level of an Eighth Amendment violation. So let me ask you, you all say, well, it should be reversed and rendered, but at the very minimum it should be vacated and sent back. Let's assume, arguendo, that that's what we decide to do. What specifically should we suggest? Because when you just send something back, that's a lot to put on the district court. What is it specifically that we should suggest if we do the vacate and remand? So start with instructions that we are permitted to put on evidence of current conditions all the way up to judgment. That would be number one. I don't believe that the court's discretion to manage the case is—allows the court to circumvent the PLRA. So I think that's really important, and it's not just in this case, because as the district court judge pointed to another case, the David Wade case, the same process is playing out right now in that case. What's that case? That case involves prison conditions at the David Wade facility up in Shreveport, and with approval of how the district court judge is managing the case, which is how she managed the case. So I think that it matters a good bit to us that compliance with the PLRA is part of the instructions. And then I believe that the other part of this, which we haven't talked very much about, is the ADA claim, and I believe that should be dismissed in its entirety, because there is no proof of any kind of systemic problems. DOJ came in, and we entered into an agreement with DOJ. They have since left. That was three years ago. I mean, that was a three-year agreement. They have come and gone. They did not enter into this case at any level. So I think that all of those things are good things. I believe that the judges should give us credit for what we have done to improve conditions, and that didn't happen in this case, not at any stage. What does it mean that the American Correctional Association is certified the prison's medical care? Is that correct? So the American Correctional Association is a recognized association that has standards for certifying conditions at a prison, and we have been certified over and over and again by the ACA. The plaintiffs rely on a different association's standards. They would like to see elevated standards, and while that may be a laudable goal for prisons and a fine goal if they wish to impose them, it's not the constitutional requirement. Was any thought ever given to exhaustion of remedies before this suit was filed? Your Honor, I think that the district court judge certified the class and found that they did not have to exhaust their remedies, and . . . Why? Futility, or what? Yes, ma'am. I think that that is not . . . the class certification ruling is not an issue in this appeal, so . . . I know, but I'm just wondering. Right. I mean, I think that the . . . in my opinion, the PLRA elevates the standards for a class relief order, and that's what she's ordered here. If it were an individual order, you would have a more narrow, tailored relief by necessity. This order applies to everyone who's ever been in Angola now or in the future in the health care that they might receive, so it's very, very broadly worded. Is it . . . I thought one of . . . what about this at the ATU? I forget what that stands for. Emergency medical technicians, and the judge didn't seem to think that was enough to avoid deliberate indifference. So, Judge Jones, the ATU is the acute treatment unit, which you've seen discussed in Dockery as well. It is not an emergency room. It is manned with EMTs, and I think there's . . . that's . . . I mean, I see nothing wrong. I don't think the standards see anything wrong with that. Okay. All right. Thank you. Okay. Mr. Dubner? Good afternoon. May it please the Court, Jeffrey Dubner for Plaintiffs' Peleys. In both their merits and remedy arguments, defendants here are asking this Court to essentially ignore and reject Brown v. Plata, a Supreme Court case that is binding on this Court. Deference to prisons has a well-defined role to play in a case like this, but it is not limitless. It doesn't take away trial courts' ability to manage cases and apply the rules of civil procedure, and it doesn't allow courts to add provisions to the PLRA that Congress chose not to enact. I'd like to start with this Court's questions about what defendants were not allowed to introduce, because I think going through the history of this case and what actually happened at the trials will help inform defendants' arguments about how current conditions did work and should work. At the liability trial, because of the delay it took to get to the case after the case was sent . . . Now, you're talking about 2018. Mm-hmm. The liability trial was in 2018. That was six years ago. Mm-hmm. Absolutely, Your Honor. And at that trial, defendants were allowed to put in any evidence they wanted of conditions past the close of discovery in a proffer. Defendants chose to put in virtually nothing. They put in nothing at all on the medical side of the case, on the Eighth Amendment side, and put in just the existence, essentially, of the settlement agreement with the DOJ on the ADA side. That was the liability trial. The remedy trial, we conducted a new round of discovery, got a new sample of medical records, information on their policies, had experts evaluate those medical records. Discovery there closed April 1st, 2022, about two months before trial was set to begin, less time than the discovery cutoff in Plata, so closer to the trial. And then defendants asked the court to allow them to put in post-discovery evidence. They filed a motion in limine. We opposed, and the court allowed them to put in every single thing they identified, every piece of post-discovery evidence that they identified, as long as it was produced to us 10 days before trial. And as far as trial evidence goes, they have identified nothing in their pleadings that they think was erroneously excluded from either trial. Now, the Attorney General referenced page 33469 of the ROA, which is actually, I think, a great example of why what they're trying to do here is really, it's going well beyond what any court has ever allowed or said was necessary, and would just turn trials into unmanageable trial by ambush. Go ahead. So at that section of the ROA, 33468 to 33470, is where they tried to introduce evidence of a change in their electronic medication administration records. Now, first off, to step back, they always had electronic medication administration records. They were present in the liability period. They were present in the remedy discovery period. And we never argued that system was deficient. They say changing that system changed everything in some way they've never stated. It's sort of like a clerk saying, hey, I moved this from Microsoft Word to Word Perfect, so I've fixed all the problems. But leaving that aside, the way they tried to introduce it, I think, is really illustrative here. They tried to have their expert testify that the day before trial started, he went down to the prison and saw the new system, something we had no information about. We had learned through an offhand remark that they had changed the system a week earlier. We asked for them to provide us any information they could on it. I have just a question, then. If you say that they were sandbagging you, and then you're going to say they sandbagged you in December, you know, right before post-trial briefs were due, and yet the court didn't come out with her remedial order until, what was it, months and months after that, so it's not as if either side couldn't have been supplementing the record, what do you do with Farmer and with Valentine saying that you don't have injunctive relief unless you can show deliberate indifference up until the time of judgment? Yes, Your Honor. In Farmer, the Supreme Court said that it is in the trial court's discretion whether to allow parties to rely on events that post-date the pre-trial motions. But excuse me. We're talking, Farmer was a lot different on the facts. We're talking about 18-month, two-year gaps when they've been making improvements, apparently, steadily, and I keep wondering why can't your side take yes for an answer? And Your Honor, in many ways we did. Certainly all of the actual improvements that we believed were credited, we conceded at the remedial trial. The judge credited them in some way. But you're still arguing that the care is deliberately indifferent, notwithstanding. But let me posit this to you. Something can be negligent and not deliberately indifferent, right? So aren't you really arguing on a spectrum that the changes may have been negligently implemented but they were not wantonly and knowingly depriving people of care by adding all these new specialty people, completely redoing their hospital deal, creating special wings for the disabled prisoners, and on and on? So Your Honor, first off, I would like to point to, talk about all the things that they didn't fix. Because as you said, the quality of the care really is the important thing here. Like you said, this is on a spectrum. But it is the district court's job to decide where on the spectrum this falls. This court said in Gates v. Cook that whether the official showed a deliberate indifference to the condition is a factual finding that is reviewed under a clearly erroneous standard. The district court considered all of these changes and found that they did not meet the farmer standard, which is were they reasonable measures to abate the risk. The evidence here in terms of the lack of care that people were receiving, the affirmatively harmful care, was truly shocking. And I'd be happy to get into some of those examples. Well, it's possible. Well, there were a couple. I read several of those examples. And a couple of those fellows were mistreated. But I'll tell you, had they been up here on individual 1983 cases, a couple of them wouldn't have gotten past the pleading stage because they were at most medical negligence. And we weren't, of course, trying to say that every single one of the 100 plus patients, the multitude of errors that were found, all would have satisfied individual deliberate indifference claims. None of our plaintiffs, or as far as I know the people in the sample, sought monetary damages. They just wanted to fix this system and prevent future harm. So now the standard for revamping an entire prison medical system is less than the standard for an individual who got mistreated and is not entitled to damages under governing law? No, Your Honor. What I was trying to say was that whether or not there might be one or two cases that wouldn't have satisfied, what our experts, four of the most accomplished and well-regarded correctional medical or emergency medical professionals in the country, found was that in their decades of practice of running prisons, of consulting for various governments, etc., this was one of the worst they reviewed. That even in the remedial phase, the evidence showed, and we find their exact quote, that the vast majority of medical records contained multiple examples, typically pervasive, of often grossly substandard medical care. The district court was allowed to make factual findings that this court has said are subject to, are due deference, are subject for review under the queer-we-erroneous standard. The court found . . . You're still, but still, I'm not attacking the 2018 judgment necessarily at this point because we're five years beyond that, and at this point you do not agree that Farmer v. Brennan and Valentine both say that you have to have deliberate indifference up to judgment. They do say that, certainly, Your Honor, and I would just clarify that the exact same problems were found not just in the liability period, but the remedy period as well. The remedy period . . . The remedy period was cut off in April of 22 for all practical purposes. Yes, Your Honor, and I'd like to go back to something defendants have said here in the reply brief, that they objected to that. They objected to them being hamstrung by it. They never objected to plaintiffs being subject to the discovery cutoff and actually asked the court to enforce it against us. They try to distinguish themselves from . . . I don't care. Do you have . . . Would you be producing more . . . I mean, I guess my point is, if they've . . . This is . . . We're operating in a vacuum because they're saying they've done all these improvements, and you want to say they're still deliberately indifferent based on stuff before the improvements occurred. And I would clarify that a little bit. We're saying that the vast majority of the improvements that they claimed, the district court reviewed. The district court considered every change. I know, and all she said was, this isn't enough. She found . . . That's all she said. I looked over every, you know . . . She found, as PhRMA requires, that they were not reasonable measures to abate the risk. That is the standard. To Your Honor's point about through the time of judgment . . . What cases are you relying on? So I think . . . Does the LRA say that in needs and intrusiveness and the three-step test? I'd be happy to move over to the remedy or finish up on deliberate indifference, whichever the court would prefer. In terms of what cases we're relying on, I actually think Valentine and Dockery are good comparisons for this case. Defendants want to compare themselves to Dockery. In Dockery, the prison fired its entire medical provider, a contract medical provider, replaced them with an entire new company with entirely new policies and procedures. Not only that, but the evidence showed that the quality of the care had improved. The evidence showed, for example, in Medication Administration, that they were now at 93 percent compliance. We have the opposite of that here. Defendants certainly changed some policies and procedures. They did not take it out root and branch. Valentine is a similar example. The evidence showed that throughout the time period, from even before . . . So you say that adding multiple specialty practitioners immediately available at the prisons, that completely upgrading the medical records system so that anybody can look at medical records at a given time, completely increasing the staffing at the ATU . . . What else am I . . . Having the sick call records documented the way the judge wanted them to be documented. I mean, good grief. So what . . . How do you say that a half a loaf is not worth anything? So I think, first off, I would point out that most of what . . . I can take the facts of those in order of the court citing them on specialty. The evidence showed, first off, that was just replacing sending people outside. They just hired people to come to the prison. We have no problem with them doing that. What the evidence also showed, however . . . Then they don't have to go to emergency rooms like the rest of us or get . . . Well, quite the opposite. They can't go to the emergency room because the prison won't send them. The evidence showed, the court found, and I think these findings are entitled to deference, they didn't fix the failure to coordinate specialty care, timely refer people, or consult. They not only aren't providing treatment recommended by specialists . . . Specialty referrals lately . . . Is the prison held to a higher standard than contemporary medical care? We're not asking for . . . Well, I wonder because I'm just going to take a little bit of liberty here, but from my own personal experience, my friends are in an age where they get specialty care quite a bit, and hardly anybody can get specialty care in an instant anymore, period. And this isn't about getting specialty care in an instant. This is people whose specialty referrals are lost to follow-up for months or years at a time. This is people where specialists order things that are never prescribed . . . That was as of two years ago. That was as of the latest records in the medical records. Two years ago or more. And so, here's the thing is, in order to check on, for example, the medical records, the only real post-trial change the defendants want the court to rely on, in order to test what effect that had, we would have had to get a new sample of patient records, we would have had to re-employ our experts to analyze it, there would have been depositions on those, there would have been a hearing. All of that would have taken several months. Well, if what they implemented amounted to, and even the judge admits this, some kind . . . and I'll let you get to remedy in just a second. But, I mean, if the judge admits they made A, B, C, D changes, which probably cost a good deal of money, frankly, then, you know, if you implement changes that are not themselves deliberately indifferent, then they're not liable. They can't have injunctive relief. And defendants cite the Gobert case for this proposition that the question before the court is, did they implement these changes because they're deliberately indifferent? Gobert said nothing of the sort. No case has said anything of the sort. The standard is what Farmer v. Brennan says, which is, are these reasonable measures to abate the risk? The court had all of the evidence before it of the risk . . . But the farmers said, we are correcting errors that were made that suggest that liability can be predicated on less than deliberate indifference, which means wanton disregard. Yes. Recklessness. And the court was more than capable on this record of finding that. I think that the evidence strongly supported it, both in terms of the actual examples of care, in terms of what defendants didn't do, didn't even claim they did, and in terms of what defendants claimed they did, but did not actually do. I guess I'm just wondering, though, if you all don't want the court to look at what changes are made, why would they make any changes? And isn't that, at the end of the day, what you want for your clients is the changes to be made so they can survive living in a prison? We certainly do, Your Honor, and, you know, if defendants' changes had actually improved the quality of care, if defendants actually followed through on some of the changes that they made that they didn't follow through on, then that would be a different story. But what we have here is the evidence didn't bear out a lot of the changes they suggested, and then they would keep coming back right before trial, and then even after trial, and then even after judgment, saying we have these changes without any actual ability for us to follow through. So, okay, what difference does this make? Okay. I guess the problem to me with the special masters, even if that would get fixed and be won and done correctly and all of that, it just seems like some more length of time, and I don't know how that helps your side, because your people can be dying in the meantime, and I don't know how it helps their side, because they don't want to be making a bunch of changes that no one cares about. So why can't this get done, and why can't there be some actual finding of what needs to be done? Because this just seems to be going on and on and on, and I would want it fixed whichever side I was on. If I was the lawyer for either one of these sides, I would be like, why can't we get this done? Yes. And, I mean, we certainly agree this case has been pending for nine years. Our clients, the class members, have not gotten relief. But I think part of that reflects that this is not a district court who is rushing out to take control of a prison. This is a district court that is taking its time and giving them every chance. Excuse me. The fact that this has gone on for nine years and that the prison has continuously been adjusting means that it has, in fact, been under a Damoclean sword imposed by the federal courts. Now, you know, I'm not going to say that the plaintiffs were responsible for the way it's evolved, but that is the way it's evolved, and at some point, counsel have to recognize that improvements have been made. And where those improvements have been made, to go back to your other point. Well, what is perfection? We're not asking for perfection. Of course you are. I mean, if you say, well, they moved this specialty, they upgraded to about 12 different specialists who make visits to the prison, but that's not good enough. What are they supposed to do? Your Honor, we're asking for a prison when, for example, the medical director is told a patient has gone into shock in the infirmary, his blood pressure at 65 over 40, his oxygen saturation plummeting, he doesn't say, I don't need to see him, leave him in a locked room so he can die an hour later. We're asking for a prison. They don't have any locked rooms now. That's incorrect. They do have locked rooms in the infirmary, Your Honor. Well, if they're, okay, if they're dangerous. Yes. And it's really, the bigger point is the refusal to see patients. What Farmer and cases since then have said is it's about current attitudes and conduct. They have 24-hour sick call now. They don't have 24-hour sick call, no. Once a day. On Monday through Thursday or Monday through Friday, yes. And in that sick call, what the evidence showed under their changes, their supposed improvements, is that patients are still not seen. Up through the very last medical records defendants were willing to produce. For example, But again, you try to get a doctor in the free world. I mean, you're asking for a standard that exceeds what I can get in the free world. I mean, a patient can go to an urgent care clinic at any time. Yeah, and you know how reliable those are? If somebody calls for an ambulance in the free world, the ambulance comes and it takes them to the hospital, to the emergency room. They may have to pay for it, but it's not like here. I had a friend recently who spent 36 hours in a bed in an emergency room at a hospital, a very well-reputed hospital in Houston, Texas. I mean, I'm sorry. We cannot measure these against a standard of perfection. And I would just repeat, I don't believe we are trying to measure it against a standard of perfection. We're trying to measure it against a standard of minimal constitutional adequacy. There's not shockingly abhorrent mistreatment and lack of treatment. Okay, let me ask this. If we were to just simply affirm that's simple enough, if we were simply to reverse and render that's simple enough. But if we thought something in between and thought it should be vacated and remanded, what would you recommend that we put in such an opinion in terms of, because again, maybe I'm the only one who thinks this, but I just think this needs to get resolved, whatever that is. If there is still, I mean, maybe the resolution is they've done everything they need to do. Maybe the resolution is they'll never do it. But I think it needs to be, unless they're told. And so, I feel like I want to know what specifically would there be to direct the district court. Because while I respect the district court has other work and can't get everything done quickly, this does seem like kind of a long case. And I think it's time to get it done. We certainly would love to have a remedy go into effect as soon as possible. I think part, I think one of the things that's helpful to understand the remedy is to look at what the district court actually did here. The district court, following this court's guidance, asked defendants if they wished to propose a remedial plan. That was in the April 11th, 2022, status conference. Defendants said they didn't want to. So we went into the remedial trial without a proposal. The court then gave the parties another opportunity. Plaintiffs offered a 20-page proposal tying it all to the evidence and neednarrowness intrusive findings. Defendants put in no plan. They said only no remedy is appropriate. The court then gave the parties an opportunity to respond to each other's submissions. Defendants said nothing at all about our proposed order or our NNI findings. And so when the court got to the remedy here, after taking its time, rather than just accepting plaintiff's, expert's words or anything, took the time to review this record of tens of thousands of pages, the district court said, well, I could enter plaintiff's order or I could enter no order or I could give defendants another chance. I could solicit independent expertise and then I could then give them a chance to make any comments. Sorry. You do concede that the way she went about this with her three quotes, special masters totally violates the PLRA. The only thing I would concede there, Your Honor, is that she used the phrase special master when she wasn't appointing special masters. Congress did not attempt to bring every kind of person that. Master is a master. Yes, Your Honor. And a special master is somebody who is designated to hold hearings in the court's stead. But she didn't appoint them as court-appointed experts. I'm not even sure she could do that, frankly, given the PLRA. The PLRA intended to provide the remedial structure for these decrees. And no court has ever said that in setting up something for special masters. No judge has tried to do this before. Oh, no, that's not true, Your Honor. In Benjamin v. Frazier and several other cases, we cite them in our briefs, several courts have said that no, 3626F and 3626G8 apply to special masters. They don't apply to other people. For example, this court in United States v. Hines County heard an argument just this past December. It's before Judges Southwick and Clement. The case is about whether a receiver satisfied the need-narrowness intrusion inquiry. Nobody contests in that case that 3626F doesn't apply. 3626F only applies to special masters. That's what Congress intended, and that's how courts have interpreted it. As the Second Circuit said in Benjamin v. Frazier, it did a careful analysis the defendants have not rebutted that explained, first off, that special masters are distinct from other kinds. There is a clear procedure here for how the remedy is supposed . . . it seems to me it's in the statute, and you're right about the Second Circuit, but you have three people appointed. You have the state paying for them. You have the state having to jump at every turn and do precisely what they say. They are, in essence, fulfilling a judicial role there. So I will definitely concede that if 3626F applies, then the order does need to be remanded for correction in that the method of appointing them doesn't comply with 3626F and the method of payment doesn't comply with them. Nothing in the PRA restricts the sort of inquiries that the court allowed them to ask. They have no ability to compel defendants to do anything, and in terms of the single master, the one versus three, I think that's a complete misreading of the statute. First off, the default rule, of course, is that senior imports the plural, but . . . But it pays for . . . suppose you appoint three. If the state doesn't pay for them, who's going to pay for them, the plaintiffs? Under the PRA, it's the court system. But also, if it's not three, then it will be one person doing the job of three people and the court will simply be paying them the rate fixed by the PLRA. The special master's rule, 53, is structured the exact same as this. Both 3626F and rule 53 are headlined special master's plural or master's plural, and then both use the singular throughout the actual section. Can you tie any of the facts that were developed to the needs, narrowness, intrusiveness standard? Absolutely, Your Honor. Well, the judge didn't. You asked her to and she didn't. I don't think that's quite correct. The judge did at pages . . . I don't have the pages in my notes. But in terms of, for the purposes of what the court did now, the court hasn't ordered any injunctive relief to plaintiffs. I'm not sure, I'm not aware of any court that has said, when the court decides that it is going to appoint somebody before it has actually appointed them, it needs to issue them. This goes to Judge Hange's question of why are we here now? The judge, when it actually appoints people, presumably will make, whether it's NNI factors or substantial complexity findings, depending on whether or not it is or is not a special master, there's no need for the court to have done that in this order. Certainly if this court wants to remand and say, when the court appoints one or more people, it will need to actually make those findings, the court can do that. But certainly for what the court has done so far, where it has simply said what it is planning to do, I don't think that's necessary. How about if we retain jurisdiction and tell her to come back with remedial order within 60 days? We would have no objection to that, Your Honor. And just, I know my time has expired, just to answer the court's question about exhaustion, that was established below, that's at ROA 17735 through 17742. Thank you. All right, sir. Your Honor, I guess, Your Honors, I'd like to just get back to the fact that this is a prison. You know, I mean, there are security concerns. Some of the restrictions that are in place are because of that. I'll draw your attention to a couple of things. My friend said that they haven't gotten any relief. That's simply not true. And I think that we certainly would go to greater pains to illustrate what relief they have seen over the years that we were never forced to put in place. You know, air conditioning is one good example of that. We've been before this court fighting federal jurisdiction over this prison. On air conditioning, Judge Jones, you were on that panel. We have since air conditioned all four of the ash dorms that are at issue, partly at issue in this case. We have clinics on-site and off-site with multiple specialty clinics. We have telemedicine. Let's go back to remedy here, Ms. Merle. He says the needs, narrowness, intrusiveness didn't have to be shown. So that's clearly contrary to precedent, and the PLRA's expressed provisions. And so I think he is challenging the precedent. And I would say that the judge's ability to manage her docket and manage a trial cannot override the expressed directions of the PLRA and precedent interpreting it. And while it is not directly on point, I would point you to a case named Miller v. French. It's a 2000 decision from the United States Supreme Court where the court exercised equitable powers to issue a, to override the stay provisions in the PLRA, and the United States Supreme Court said you can't do that. You cannot override the limitations that were expressly put in place by Congress by using some of the equitable powers that remain within the scope of the power of the court. You have to read those limitations and comply with those limitations because they are expressed and they are directed by Congress. So I don't think that there's any reason why the court couldn't comply with those provisions. The remedy didn't come out for a year and a half after the trial. I understand that. If this court, and I understand Judge Dick has a lot on her plate right now, but if this court had an additional testimony about change conditions, could she do that within 60 days? Well, Your Honor, I don't know what her docket is. I would say that we would be satisfied, I mean, I think that we would be happy to take, I'm not going to look a gift horse in the mouth, if we are, I'll take a win, if it's a remand with instructions on to properly apply the law and give us a chance to put on the evidence that we wanted to put on to begin with and to get a quick ruling on it. That's better. Your opponent seems to be saying that you really didn't have anything, that you kept saying you wanted to put it on but really didn't have much on the plate. What about that? Well, Your Honor, it was a year and a half before we got an order after the remedial trial. We did try to put evidence on at the trial. I think I've walked through and we have argued in the brief about a number of the changes that have been in place and we could show they're durable. For the party, are you still constrained? In other words, the way this thing was tried was essentially almost like a bellwether case, right? Because they got to pick X number of case files that showed the worst possible treatment but the state never came back with anything that showed how many sick calls were handled, how many medications were administered, how many special—I mean, is that—am I correct about that? No, Your Honor. I think that we certainly could put that evidence on. I mean, it was treated— But you didn't. We did not put that kind of global evidence on at the trial. Okay. Just wondering. I mean, I think we did take each plaintiff and show that the evidence was not as—that we have shown, I think, very clearly that some of the evidence that Judge Dick relies on in her ruling is only half the evidence that was put on at trial. So, for example, there are some people where Judge Dick said, well, did not get a urology consult and, in fact, that person did get a urology consult or wasn't transported to the hospital. They were put on if they were actually given— That evidence was put on. So that's in the record. Now, I think what Judge Jones was asking Judge Douglas is did we put on more global evidence about the totality of treatment that was received by everybody at the prison and sick hall and other things. The way the evidence was put on was, because it's their burden of proof, the evidence went individuals by individuals. So you let them pick the cases they wanted, and then it was the state's position that the treatment was at most negligent but not deliberately indifferent, if it was, in fact, bad at all. Well, I think that's how it started, Your Honor, if I may finish the answer. I think that that was nine years ago, and then we had a remedial trial. I think the liability phase is really irrelevant at this point. We came back to a remedial hearing, and at that point we said, look, we've done more. We've done all these things. We weren't allowed to put a lot of that—we weren't even allowed to cross some of their witnesses about some of their experiences. And then we tried to do it again, and we still weren't allowed to do that. So even if it started in that manner, I would say it didn't end in that manner. The red brief says that right before the remedial trial, the defendant stipulated that the expert sample was not too small to be reliable or representative of the defendant's medical care. Is that the reason why y'all didn't refute it, because of the stipulation? Your Honor, I think that the stipulation was intended to try and get this case to closure, and our position all along has been that we are able to show that they are receiving constitutional care, that it isn't an individual-by-individual examination. This is a prison conditions case where they are claiming that the totality of the circumstances result in deliberate indifference to unconstitutional standards, and that even with the people that they picked, they couldn't show that. And those were the most complex cases. They were really difficult cases in most of those cases. Thank you, Your Honors. All righty. Thank you. Oops, I forgot this. We'll be in recess.